# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PAUL DOMBROWSKI and LAURA MORRISON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO.: 2:08-CV-217-TS |
| ADMINISTRATOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, NATIONAL FLOOD INSURANCE PROGRAM, part of UNITED STATES DEPARTMENT OF HOMELAND SECURITY and JACK OGREN & COMPANY, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiffs, Paul Dombrowski and Laura Morrison, obtained flood insurance from the Federal Emergency Management Agency (FEMA) for their property in Hammond, Indiana. They have sued FEMA, claiming that it wrongfully denied their claim for damages caused by flooding to the insured property. They also assert a tort claim against Jack Ogren & Company, Inc., as the insurance agency that sold them the policy. This matter is before the Court on the Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 18].

## BACKGROUND

On July 29, 2008, the Plaintiffs filed their Complaint against FEMA[1] in this Court

---

[1] The Plaintiffs named the Defendant as FEMA, National Flood Insurance Program, part of the United States Department of Homeland Security. The Defendant notes that, as a federal agency or component of the Department of Homeland Security, FEMA cannot be sued in its own name. However, the National Flood Insurance Act, 42 U.S.C. § 4072, provides that a party may sue an Administrator of FEMA in his official capacity to assert claims related to the disallowance or partial disallowance of a

asserting that it wrongfully denied coverage for flood damage to a pool cabana. The Plaintiffs also allege that FEMA acted unlawfully when it only paid $5,820.54 in claims despite evidence that damage to air conditioning units and necessary air handlers totaled $43,000. In addition to the claim regarding coverage, the Plaintiffs allege that FEMA breached its insurance policy by misrepresenting facts including those related to the method of determining the amount of loss, by failing to adopt reasonable standards for a prompt investigation of claims, refusing to pay claims without a reasonable investigation, failing to affirm or deny claims within a reasonable time after proof of loss statements have been completed, not attempting in good faith to effectuate settlements of claims, and requiring them to resort to litigation to recover the full coverage amount. They assert that these acts, in addition to being a breach of the insurance policy, constitute the tort of bad faith. The Plaintiffs allege that the insurance agent Defendant committed negligence and misrepresentation in connection with obtaining flood insurance, specifically with respect to the scope of their coverage. The Plaintiffs attached the following to their Complaint: National Flood Insurance Program (NFIP) Standard Flood Insurance Policy Number 3000085172 (the Policy); a September 13, 2007, Letter from FEMA denying payment; an October 16, 2007, Notice of Loss; and an October 23, 2007, Letter rejecting proof of loss and accepting adjuster's scope of damage in the amount of $5,820.54.

On December 16, 2008, FEMA filed the Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 18], and Memorandum in Support [ECF No. 19]. FEMA argues that the Court should dismiss the Complaint against it because it does not

---

flood insurance claim. The suit is thus considered to be one against the Administrator. The Court will continue to refer to the federal Defendant as FEMA.

comply with the limited waiver of sovereign immunity under the National Flood Insurance Act (NFIA) and its implementing regulations. FEMA argues that these regulations require a proof of claim certifying that flood waters directly caused property damage, and that the Plaintiffs' proof of claim did not meet this standard because it requested money to replace an air handler in the attic that was not directly damaged by flood waters, but instead only needed to be replaced to comply with federal building codes and efficiency standards. FEMA contends that no part of the pool cabana was covered by the Policy, and FEMA asserts that the Plaintiffs' state law claims, request for punitive damages, and request for jury trial are not available pursuant to the NFIA's limited waiver of sovereign immunity. FEMA argues that any tort claims outside the purview of the NFIA that the Plaintiffs assert against it may only be pursued under the Federal Tort Claims Act (FTCA), but that the Plaintiffs have failed to comply with the prerequisite to bringing any such claims.

On July 29, 2009, the Plaintiffs filed their Motion in Opposition to Defendant FEMA's Motion to Dismiss or Alternatively Summary Judgment [ECF No. 24], Memorandum in Opposition to Defendant FEMA's Motion to Dismiss or Alternatively Summary Judgment [ECF No. 25], and Designation of Evidence in Opposition to Defendant FEMA's Motion to Dismiss or Summary Judgment [ECF No. 26]. The Plaintiffs argue that genuine issues of material facts exist as to whether the Defendant engaged in acts of fraud and misrepresentation, and that these claims are not preempted by the NFIA. Regarding coverage, the Plaintiffs maintain that FEMA should pay to replace the air handler in the attic, but they admit that the cabana was not a building covered by the Policy at the time of the flood and that all claims asserted with regard to the cabana "should be summarily dismissed." (Pls.' Mem. 26.) In their Memorandum, the

Plaintiffs also agreed with FEMA's position that they are not entitled to a jury trial, punitive damages, or an award of interest on any judgment.

On September 4, 2009, the Defendant filed its Reply Memorandum in Support of Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 29].

**STATEMENT OF FACTS**

The NFIP was established to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. The NFIP is administered by the Director of FEMA under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4129. FEMA, an agency of the Department of Homeland Security, administers the NFIP. FEMA regulations establish the terms of Standard Flood Insurance Policies (SFIPs) like the one obtained by the Plaintiffs for their house in Hammond, Indiana. The Plaintiffs purchased the Policy in 1995 when an Application for Flood Insurance prepared by Jack Ogren & Company, Insurance, Inc., was submitted to FEMA, and it was renewed each year from 1996 to the present.[2]

On August 25, 2007, flooding of a nearby river by heavy rain caused the Plaintiffs' house to sustain flood damage. The Plaintiffs maintain in their Complaint that the flooding caused significant damage to a pool cabana immediately adjacent to the house and to the home's foundation and to its complex and expensive air conditioning system and its concomitant air handlers. On August 27, Plaintiff Dombrowski contacted the NFIP by telephone and informed it of the loss. An agent of Jack Ogren Insurance also contacted NFIP and advised of the flood loss.

---

[2] Facts concerning the dwelling covered by the Policy are not included as the Plaintiffs have acknowledged that the Policy for their single family home with basement and two floors did not cover the pool cabana. *See* Pls.' Mem. 26, ECF No. 25.

FEMA opened a claim file and assigned the claim to independent adjusting company, Elder Claims Service Inc. (Elder), to inspect the flood damage. On August 29, an Elder adjuster met with the Plaintiffs and conducted a cursory inspection of the property. The adjuster informed the Plaintiffs that the pool cabana was not covered by their Policy because it was not attached to the insured structure. On September 4, FEMA received Elder's invoice and final report, which described the flooding and advised of minimal damage. The adjuster reported that, although water rose two to three inches up two outside air conditioning units, they did not appear to be damaged. Elder estimated $936.64 in damages to address flooding in the basement crawl space and the exterior of the home. Because the deductible was $1,000, the claim submitted to FEMA was for no money. On September 13, 2007, FEMA informed the Plaintiffs that it was not tendering payment because the adjuster's estimate was less than the Plaintiffs' deductible. The Plaintiffs contacted FEMA by telephone to request coverage of an air conditioning unit, and they were advised to send in a statement from their HVAC contractor.

On September 17, FEMA received correspondence from the Plaintiffs requesting that FEMA pay for the replacement of their central air conditioning equipment, and providing an explanation in support of the Plaintiffs' request to replace the air handler on the third floor:

> The components submerged by flood water include 2 compressors and 1 air handler in the basement crawl space. Another air handler located in the attic on the third floor was not submerged by flood water. However, for the third floor air handler to function with the new compressor and meet federal regulations, it must be replaced because its parts are not interchangeable with the new compressor.
> The reason that the existing air handler is not interchangeable with the new compressor is because HVAC system efficiencies have improved considerably in the past few years. Part of this improvement was federally mandated in 1990, through the culmination of the National Emergency Conservation Policy Act of 1971. Moreover, in January 2006, the Department of Energy increased the minimum efficiency of HVAC units from 10 to 13 SEER

5

> [Seasonal Energy Efficiency Rating]. These regulations established minimum efficiency standards for heating and cooling equipment. As a result, all models manufactured today are more efficient than those made just 10 years ago. Parts from 1990 are not interchangeable with new systems.

(Sept. 17, 2007, Letter, ECF No. 19-6 at 7.) The Elder adjuster reviewed the Plaintiffs' estimate and spoke to the contractor who prepared the HVAC estimate. He then submitted a supplemental report to FEMA, which included replacement of two air conditioning units and one air handler, but did not include replacing the third floor air handler and other items that were not damaged by the flooding. The Plaintiffs objected to the supplemental report's scope of damages, reiterating the need to replace the air handler in the third floor for the air conditioning system to operate.

On October 16, the Plaintiffs submitted a proof of loss to the Defendant claiming damage to "Cabana building, primary residence and A/C System damage due to 1) Little Calumet River high water; 2) levee breach that flowed water into Cabana building and into the crawl space and onto A/C system; the pressure of water against the buildings and other flood damage." (Notice of Loss, ECF No. 29-2 at 13–14; Dep. Karen Christian at 118–19, ECF No. 29-2 at 9–10.) The Plaintiffs claimed $43,127.46 as the amount of loss caused by the flood and covered by the Policy. In the documentation supporting the proof of loss, the Plaintiffs included a letter from a heating and air conditioning company (a certified adjuster) explaining why the company's proposals for replacing the air conditioning systems that were damaged in the flood included replacing two air handlers, one in the attic and one in the basement crawl space. (Letter, ECF No. 29-2 at 15.) The letter stated that "even though the air handler in the attic wasn't flooded, it's no longer a serviceable component because the outside A/C unit was damaged." (*Id.*) The letter also explained that the home's air handlers were not compatible with new air conditioning equipment and if the air handler in the attic was not replaced, the central air conditioning

equipment on the second and third floors would not operate properly and would not meet the government efficiency standard of 13 SEER. (*Id.*)

On October 23, FEMA wrote the Plaintiffs to reject the proof of loss for $43,127.46 and accept $5,820.54 in losses on the basis of the Elder adjuster's previously-submitted scope of damages. FEMA explained that it would only pay for building items that were directly damaged by or from flood, and that thermostats, the air handler in the attic, and other related items did not meet this criteria. (Oct. 23, 2007, Letter, ECF No. 19-8.) FEMA directed the Plaintiffs to Policy excerpts in support of its denial, including paragraph 6 of the exclusions, which states that FEMA will only provide coverage for the direct physical loss by or from flood, which means that it would not pay for the "cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris." (*Id.*) FEMA issued a check to the Plaintiffs for $5,820.54.

The Plaintiff continued to dispute FEMA's position regarding coverage for the attic air handler and other expenses and hired its own public adjuster, who submitted an estimate and challenged the estimating system FEMA used to determine the scope of damages. FEMA continued to deny the claims on grounds that the Policy only covered direct damage by or from a flood and did not cover any increased building code requirements.

## ANALYSIS

**A.      Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. In considering motions to dismiss for

failure to state a claim, "[courts] construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). "A plaintiff . . . must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo*, 526 F.3d at 1083 (quotation marks and citations omitted). Although a complaint does not need detailed factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009) "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* In addition, a plaintiff can plead himself out of court if it would be necessary to contradict the complaint in order to prevail on the merits. *Tamayo*, 526 F.3d at 1086.

When parties seeking dismissal submit documents with their motions to dismiss, courts

can either exclude the documents or convert the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Here, the Defendant has already moved, in the alternative, for summary judgment under Rule 56, and the Plaintiffs have responded citing both Rule 12(b)(6) and 56 standards, and designating their own documents. A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

**B.	Recognized Causes of Action, Sufficiency of Pleadings, Preemption, and Exhaustion**

Section 4072 of the NFIA establishes the conditions under which FEMA may be sued on a claim involving the NFIP. The statute provides, in pertinent part:

> [T]he Director [of FEMA] shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, . . . the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

9

42 U.S.C. § 4072. The Policy at issue states that it, "and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001 et seq.), and Federal common law." (Policy, ECF No. 1-2.) This statement about governing law tracks with the language for SFIPs contained in the regulations. 44 C.F.R. Pt. 61, App. A(1), Art. IX.

The Plaintiffs allege in their Complaint that FEMA breached its contract of insurance when it denied coverage to replace air handlers that constitute part of an air conditioning system that was damaged by flooding. This is a coverage issue prompted by the partial disallowance of a claim and is thus a claim contemplated by the NFIA and within the exclusive jurisdiction of this Court. Neither party disputes this conclusion. It also appears that the parties agree that extra-contractual claims for breach of the duty of good faith and fair dealing are preempted by the NFIA. (Def.'s Reply Mem. 12–13, ECF No. 29 (arguing that bad faith claims may not be pursued under the NFIA); Pls.' Mem. 28–29, ECF No. 25 (acknowledging that state law claims for breach of the duty of good faith based on a denial of coverage under a policy issued pursuant to the NFIA are preempted by state law).) The Plaintiff maintains that their claim for fraud and misrepresentation, on the other hand, is not preempted because it is not a coverage dispute. FEMA argues that the Plaintiffs cannot pursue the fraud and misrepresentation claim because they cannot meet the elements, they have failed to comply with the FTCA, and the FTCA specifically bars such claims.

The Plaintiffs maintain that "[i]ntentional misrepresentation and fraud in flood insurance coverages and claims adjusting are at the very core of [their] allegations in this case" (Pls.' Mem. 1, ECF No. 25), and that it has sufficiently stated a cause of action for fraud and

10

misrepresentation (Pls.' Mem. 9). The Court notes that the Plaintiffs' Complaint does not mention fraud as a cause of action, but does allege that FEMA made misrepresentations that constitute a breach of contract.[3] Federal Rule of Civil Procedure 8(a) requires that a pleading set forth "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). In addition, allegations of fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances of fraud "include 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Gen. Elec. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)). The Plaintiffs allege that FEMA misrepresented facts related to coverage, "including but not limited to necessary items covered under the policy, the method of determining the amount of loss, and the buildings covered by the policy" (Pls.' Compl. ¶ 5.2(1)), and that it misstated coverage (*id.* ¶ 5.2(7)). These allegations fall well short of providing the requisite particularity for fraud claims. The remainder of the allegations related to this claim concern FEMA's failure to take certain action. These allegations do not state a claim for fraud because fraud requires a material misrepresentation of past or existing fact or (in the case of constructive fraud) remaining silent when a duty to speak exists. *Heyser v. Noble Roman's Inc.*, — N.E.2d —, 2010 WL 3269254. at *3 (Ind. Ct. App. Aug. 19, 2010) (providing the elements of

---

[3] The claims for intentional misrepresentation and fraud do not appear to be distinct claims, but two ways to say the same thing. In their Memorandum, the Plaintiffs cite the elements of fraud and constructive fraud that are recognized in Indiana. (Pls.' Mem. 10.)

fraud and constructive fraud). In addition, one element of a successful fraud claim is that the plaintiff relied to his detriment on the misrepresentation. *Id.* There is no indication in the Complaint that the Plaintiffs relied on FEMA's representation regarding the amount of loss or the scope of coverage. To the contrary, the undisputed evidence is that they actively opposed FEMA's position by, among other things, submitting documentation to challenge FEMA's scope of damages and obtaining their own adjuster.

Even if the Court assumes that the Complaint pleaded fraud and intentional misrepresentation with the requisite particularity and otherwise stated a plausible claim for relief, the Plaintiff's could not proceed with those claims in this case. The Defendant argues that the Plaintiffs' state law claims are not recognized by the NFIA which only allows judicial review of FEMA's disallowance of a "claim" for "losses covered by flood insurance." *See* 42 U.S.C. § 4072. The Plaintiff argues that their claims for fraud and misrepresentation are not "coverage" disputes and are thus not preempted by federal law. The Court takes the Plaintiffs to be arguing that claims not recognized under the NFIA because they do not concern coverage under a SFIP are not preempted by federal law. Stated another way, Congress, via the regulatory power of FEMA, has only preempted state law with respect to handling-related claims. Although the Court may well agree, *see* 44 C.F.R. pt. 61 app A(1), Art IX ("This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by" FEMA regulations), it is by no means clear that the Plaintiffs' claims are unrelated to the handling of their claim. In fact, quite the opposite appears to be true. In their Complaint, the Plaintiffs assert that FEMA's purported misrepresentations constitute a "breach of contract" and a refusal to honor the Policy terms. In their Memorandum discussion of the fraud and misrepresentation

12

elements, the Plaintiffs assert that the Complaint sufficiently states a claim for breach of contract when FEMA denied their claim for flood damage for the air conditioning system and did so only upon a cursory investigation and in contravention of coverage. In addition to taking issue with the purported cursory inspection FEMA conducted, the Plaintiffs challenge the methods of calculating loss that the adjuster used. The Plaintiffs also argue that FEMA intentionally misstated flood policy coverage when denying a portion of their claims (presumably when it stated that the air handler was not covered because it was not directly damaged by flood water). These disputes are nothing more than a disagreement with a SFIP claim, specifically the partial disallowance of a claim, and they relate directly to the application of the Policy terms and coverage. As such, they are governed by the NFIA, flood insurance regulations issued by FEMA, and federal common law.

To the extent that the Plaintiff's claims are not coverage or contract disputes and are, instead, tort claims, they are governed by the Federal Tort Claims Act (FTCA), which waives the United States of America's sovereign immunity for certain money damages claims. *See* 28 U.S.C. § 1346(b) (permitting an injured party to bring a civil action for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment). However, the government's consent to be sued in tort under the FTCA is limited, *Williams v. Fleming*, 597 F.3d 820, 822 (7th Cir. 2010), and the waiver of sovereign immunity under the FTCA must be strictly construed, *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941). One such limitation is that the plaintiff must first exhaust his administrative remedies. *See Williams*, 597 F.3d at 822 (noting that when Congress enacted the FTCA, one way in which it preserved its sovereign

immunity was to provide various procedural mechanisms). Pursuant to 28 U.S.C. § 2675(a), an action shall not be instituted upon a claim against the United States for money damages unless the claimant has first presented the claim to the appropriate federal agency and his claim has been finally denied by the agency in writing and sent to him by registered mail. The failure of an agency to make a final disposition of a claim within six months after it is filed shall be deemed a final denial of the claim. See 28 U.S.C. § 2675(a). An administrative claim submitted after a lawsuit is filed cannot cure a jurisdictional defect which was present when the suit was filed. *McNeill v. United States*, 508 U.S. 106, 106 (1980); *see also Best Bearings Co v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972).

FEMA argues that the Plaintiffs' tort claims must be dismissed because they did not file an administrative claim with FEMA before filing their federal suit. FEMA designates the sworn declaration of Edward Broyles, FEMA's Associate Chief Counsel for General Law in the Office of Chief Counsel (OCC). The OCC is designated by federal regulations as the addressee for all administrative tort claims against FEMA under the FTCA, and it has in place routine procedures for the handling of any such claims. Broyles' review of administrative claims received in the OCC from August 25, 2007, to the present did not reveal any tort claim filed by the Plaintiffs. The Plaintiffs do not present evidence to refute that they did not file a tort claim, but respond that they have exhausted all administrative remedies under the Policy. This argument misunderstands FEMA's argument and the exhaustion requirements of the FTCA. Compliance with the Policy, including exhausting remedies, is necessary to bring a claim for contractual damages under the Policy and the NFIA. It does not address exhaustion for purposes of asserting tort claims against the United States under the FTCA. The Plaintiffs did not file an administrative claim with FEMA

14

alleging any tort claims and requesting a sum certain, which means that any such claims asserted in this lawsuit are subject to dismissal. *See Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) ("A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).[4]

The FTCA's procedural mechanisms are not the only means by which the United States protects its sovereign immunity. The FTCA also limits the types of tortious conduct for which the government can be sued. FEMA argues that the Plaintiffs' tort claims are barred under these provisions of the FTCA, which specifically include claims for "misrepresentation" and "deceit" among those that may not be pursued. 28 U.S.C. § 1680(h). "[T]he FTCA by its terms excludes both negligent and intentional misrepresentation claims from its coverage." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 430 (1990). According to the Seventh Circuit, the FTCA's exception to liability for deceit refers to common law fraud, defined as intentional misrepresentation. *Paul v. United States*, 929 F.2d 1202, 1204 (7th Cir. 1991); *Krejci v. U.S. Army Material Dev. Readiness Command*, 733 F.2d 1278, 1281 (7th Cir. 1984). The Plaintiffs' misrepresentation claim, which they contend requires proof of a false statement communicated to the Plaintiffs and on which they relied to their detriment, are barred by the misrepresentation exception to the FTCA.

---

[4] This analysis applies equally to the Plaintiffs' claim under Indiana law that FEMA failed to maintain good faith in effectuating the Policy, as such claims sound in tort. *See Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993) (recognizing the tort that arises when an insurer breaches the duty to deal in good faith with its insured); *see also USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 541 (Ind. 1997) ("An insurance company has a duty to deal with its insured in good faith, and the breach of that duty allows for a cause of action in tort."). Accordingly, even if the Plaintiffs had not acknowledged that their bad faith claim is preempted by the NFIA, it would fail for failure to file the requisite tort claim with FEMA.

15

## C. Denial of Coverage for Replacement of Attic Air Handler

Because the Plaintiffs concede that the Policy did not cover the cabana and the Court finds that the bad faith, and misrepresentation claims may not be pursued in this action, the remaining issue is whether the Policy provides coverage for replacement of the attic air handler and related costs. The facts surrounding this claim are not disputed. Up to three inches of flood water came into contact with the exterior of the Plaintiff's home, including two air conditioning units located on the exterior. Flood water also reached the crawl space in the interior of the home where an air handler was located. The attic of the home was not flooded, but the existing air handler in the attic will not interchange with a new system, including the units that would replace those that were impacted by the flooding. The Plaintiffs' proof of loss included the cost of replacing the air handler located in the attic.

FEMA argues that the Plaintiffs cannot recover this cost because the flood did not directly damage the air handler on the third floor. The Plaintiffs submit that because a flood caused physical damage to two air conditioning units and an air handler in the lower crawl space, which necessitated replacement of the entire air conditioning system, the Policy must provide coverage. The Policy covers "Direct Physical Loss By or From Flood," which is defined as "[l]oss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." (Policy § II Definitions, p.2 ¶ 12; 44 C.F.R. Pt. 61, App. A(1), Art. II Definitions, ¶ 12.) The Exclusions section of the Policy states, "We will provide coverage for **direct physical loss by or from flood,** which means that we do not pay you for . . . [t]he cost of complying with any ordinance or law requiring or regulating construction, demolition, remodeling, renovation, or repair of property." (Policy § V Exclusion, p.9 ¶ 6, ECF No. 1-2 at 12

16

(emphasis in original).)

The common-sense reading of a contract term is material to federal common law interpretation. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). Federal common law rules of contract interpretation require that the court interpret the terms of a policy in an ordinary and popular sense as would a person of average intelligence and experience. *McNeilly v. Bankers United Life Ins. Co.*, 999 F.2d 1199, 1201 (7th Cir. 1993) (applying federal law in an ERISA case). If an insurance contract exception to coverage does not unambiguously encompass a particular set of facts, it cannot be invoked to deny coverage. *Id.* However, ambiguity will not be artificially created where none exists. *Id.* In addition, SFIPs are strictly construed because all claims are actually paid by the United States Treasury. *Suopys v. Omaha Prop. and Cas.*, 404 F.3d 805, 809 (3d Cir. 2005) (citing *Fed. Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947)).

A common-sense reading of the Policy provisions convinces this Court that the cost of replacing the attic air handler is not covered by the SFIP. Beginning in 2006, air conditioners manufactured and installed within the United States must meet an efficiency level of at least 13 SEER. None of the air conditioning equipment in the Plaintiffs' home, including the air handler, met this standard before the flood. The flood directly damaged two air conditioning units and one air handler. A second air handler on the third floor was not actually damaged by the flood and it suffered no physical changes. It was in exactly the same condition after the flood as it was before the flood. However, because any new air conditioning equipment had to meet the 13 SEER rating, the less efficient attic air handler would not interchange with it. To the extent the air handler will not operate properly within the system, it is only indirectly because of the flood.

The direct cause is the replacement of the other components of the air conditioning system with more efficient units (which were directly damaged by the flood). These indirect costs are exactly the type of loss that the SFIP unambiguously excludes and FEMA is entitled to judgment as a matter of law on the Plaintiffs' coverage dispute.

### D. Claim Against Jack Ogren & Company, Inc.

The Plaintiffs allege that Jack Ogren & Company was negligent in procuring coverage and for failing to advise the Plaintiffs regarding the limits of their coverage as it related to the cabana. This is not a claim against FEMA and is not related to FEMA's handling or denial of an insurance claim. It is a state tort claim related to the insurance agent's advice over which this Court would exercise supplemental jurisdiction. The federal statute that allows supplemental jurisdiction of state law claims also provides that the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which is has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "if federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Wright v. Ass'd Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). The Court finds no reason to depart from the general rule and will dismiss the state law claim against Jack Ogren & Company without prejudice.

## CONCLUSION

For the foregoing reasons, the Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 18] is GRANTED. The Clerk will enter judgment in favor of FEMA and against the Plaintiffs on the claims asserted against it. The Plaintiffs' state law claim against Jack Ogren & Company, Inc. (Count VI) is DISMISSED WITHOUT PREJUDICE.

SO ORDERED on September 13, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION